This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ROSEMARY JORDAN, SCOTT JORDAN,**
**TRACEY JORDAN, DONALD ROMERO,**
**and THERESA ROMERO,**

Plaintiffs-Appellees,

v.                                                                                    NO. 28,638

**ALLSTATE INSURANCE COMPANY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Eugenio S. Mathis, District Judge**

Berardinelli Law Firm
David J. Berardinelli
Santa Fe, NM

for Appellees

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Lisa Mann
Jennifer A. Noya
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Appellant, Allstate Insurance Company (Allstate) appeals the district court's grant of summary judgment in favor of Appellees, Rosemary Jordan, Scott Jordan, Tracey Jordan, Donald Romero, and Theresa Romero (Plaintiffs). Allstate contends that the district court erred when it held that Plaintiffs did not execute a valid rejection of uninsured motorist (UM) and/or underinsured motorist (UIM) coverage on their Allstate automobile insurance policies, and therefore, Plaintiffs were entitled to UM/UIM coverage limits equal to the liability limits on those policies. Allstate further contends that the district court erred in refusing to dismiss or sever Plaintiffs' complaint for improper joinder and lack of standing. We affirm.

**BACKGROUND**

The facts in this case are not in dispute. This case involves two separate sets of Plaintiffs and two separate automobile insurance policies. Both policies were issued by Allstate and both policies contained a lower amount of UM/UIM coverage than liability coverage. The policy Allstate issued to the Jordans contained liability coverage of $100,000 per person, $300,000 per occurrence, and UM/UIM coverage of $25,000 per person, $50,000 per accident. Similarly, the policy Allstate issued to Donald and Teresa Romero contained liability coverage of $100,000 per person, $300,000 per occurrence, and UM/UIM coverage of $25,000 per person, $50,000 per accident.

Plaintiffs signed forms entitled "Uninsured Motorist Insurance (Coverage SS) Selection/Rejection Form" during the application process. These forms indicated the amount of UM/UIM to be included in Plaintiffs' policies. Allstate does not dispute that these forms were not attached to the policies that were subsequently sent to Plaintiffs.

After the policies were issued, Allstate mailed documents entitled "Important Notice" to Plaintiffs. These notices were generic documents (i.e., not policy specific) which instructed the recipient to check the policy declarations page to make sure the UM/UIM coverage shown is in the amount requested. The notices also instructed the insureds as to their options regarding UM coverage.

In two separate accidents, Rosemary Jordan and Donald Romero were injured by the negligence of uninsured/underinsured drivers. Plaintiffs made demands against their Allstate UM/UIM insurance policies for UM/UIM coverage at the liability limits of their policies, alleging that Allstate had failed to obtain a valid written rejection of UM/UIM coverage at the liability limits of the policies. In both cases, Allstate tendered, and Plaintiffs accepted, UM/UIM coverage in the amount specified in each of the two policies.

Plaintiffs brought suit in district court seeking declaratory relief. Plaintiffs' complaint asked the court to declare that Allstate had failed to obtain a valid rejection of UM/UIM coverage from Plaintiffs, and therefore, the amount of UM/UIM coverage

3

available to Plaintiffs under their respective policies was equal to the liability limits of those policies. Allstate filed two motions to dismiss that resulted in a temporary stay of the proceedings. After the stay was lifted, the district court heard the cross motions for summary judgment that were previously filed by the parties. The district court granted Plaintiffs' motion and denied Allstate's. The district court concluded that Allstate was required to offer Plaintiffs UM/UIM coverage up to the liability limits of their automobile insurance policies; that Plaintiffs' selection of UM/UIM coverage in an amount less than the liability limits constituted a rejection of UM/UIM coverage; and that because Allstate failed to obtain a valid written rejection of that coverage, UM/UIM coverage equal to the liability limits of Plaintiffs' policies will be read into the policies. Allstate filed a timely appeal.

Allstate argues on appeal that Plaintiffs' choice to purchase UM/UIM coverage in an amount less than the liability limits of their policies was not a rejection of UM/UIM coverage and that even if it was a rejection, Allstate's application form, notices, and the declarations pages of the policies were sufficient to meet New Mexico's regulatory requirements. Allstate also argues that the district court should have dismissed or severed Plaintiffs' complaint for improper joinder and lack of standing.

**DISCUSSION**

4

**Standard of Review**

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "An appeal from the grant of a motion for summary judgment presents a question of law and is reviewed de novo." *Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 16, 141 N.M. 21, 150 P.3d 971 (filed 2006). "All reasonable inferences are construed in favor of the non-moving party." *Id.* (internal quotation marks and citation omitted).

**New Mexico Law Requires Rejection of UM/UIM Coverage**

Allstate argues that, in each case, Plaintiffs' purchase of UM/UIM coverage in an amount less than the liability limits of their policies was not a rejection of UM/UIM coverage because New Mexico law only requires minimum UM/UIM coverage of $25,000 and optionally permits the insured to request additional UM/UIM coverage up to the liability limits of the policy. We disagree.

UM/UIM insurance coverage in New Mexico is regulated by the uninsured motorist statute contained in NMSA 1978, Section 66-5-301 (1983). This statute states, in part, that insurers must provide UM coverage in "minimum limits . . . as set forth in Section 66-5-215 NMSA 1978 *and* such higher limits as may be desired by the insured, but up to the limits of . . . liability provisions of the insured's policy." Section 66-5-301(A) (emphasis added).

In *Romero v. Progressive*, 2009-NMCA-\_\_\_, \_\_\_ N.M. \_\_\_, \_\_\_P.3d \_\_\_, (No. 28,720, Oct. 26, 2009) (*Romero I*) this Court recently interpreted this section of the statute to "place two equally weighted requirements on insurers. First, insurers are required to provide UM/UIM coverage of not less than the minimum statutory requirement. Second, insurers are required to provide UM/UIM coverage up to the limits of the liability coverage contained within a given policy." *Id.* ¶ 16. We further stated that, based on this interpretation, insurers have an affirmative duty to "*offer* UM/UIM coverage up to the level of the liability limits of an automobile insurance policy." *Id.* ¶ 22. We held that because insurers are statutorily required to offer UM/UIM coverage up to the liability limits of the policy, a purchase of an amount less than the liability limit by the insured is a rejection of the UM/UIM coverage that is statutorily available to the insured. *Id.* ¶ 24.

In the present case, both sets of Plaintiffs purchased UM/UIM coverage of $25,000 per person, while purchasing liability coverage of $100,000 per person. Therefore, Plaintiffs rejected $75,000 of the UM/UIM coverage which they were entitled to purchase under the statute.

**Requirements for a Valid Rejection of UM/UIM Coverage**

Allstate next contends that even if it was required to offer Plaintiffs UM/UIM coverage at the liability limits of the policy and was therefore required to obtain a

6

valid rejection of such coverage when Plaintiffs selected an amount less than the liability limits, it has met the rejection requirement. Allstate claims that the Selection/Rejection forms signed by Plaintiffs during the application process, the Important Notice forms subsequently mailed to Plaintiffs, and the declaration pages of the policies meet the requirements of a valid rejection. Again, we disagree.

Section 66-5-301(C) of the UM/UIM statute permits a policyholder to reject UM/UIM coverage defined in subsections A and B of that statute. The specific requirements for such a rejection are defined by regulations promulgated by the superintendent of insurance, as noted by our Supreme Court in *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 156, 803 P.2d 243, 245 (1990) (*Romero II*). The superintendent's requirements are defined in 13.12.3.9 NMAC (11/30/02), which states that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 . . . must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." 13.12.3.9 NMAC.

The *Romero II* Court also stated that, to be valid, a rejection must "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived[]" to ensure that the insured has "affirmative evidence of the extent of coverage" sufficient to permit the individual to reconsider rejection at a later date. 111 N.M. at 156, 803 P.2d at 245.

7

In this case, Allstate did not attach the Selection/Rejection form to the copies of the policies it gave to Plaintiffs, and therefore, Allstate did not make the Selection/Rejection form a part of Plaintiffs' policies as required by 13.12.3.9 NMAC. Similarly, Allstate's Important Notices form was not attached to the copies of the policies received by Plaintiffs. In addition, the Important Notices form appears to be a generic form that does not contain any information regarding the specific UM/UIM coverage contained in each recipient's policy.

New Mexico courts strictly interpret the requirement that, to be valid, a rejection must be attached or otherwise made part of the policy. *See Kaiser v. DeCarrera*, 1996-NMSC-050, ¶¶ 8, 10, 122 N.M. 221, 923 P.2d 588 (holding that a rejection of UM/UIM coverage is invalid where the copy of the insurance policy the insured received did not contain a copy of the rejection, even though the insured had knowingly and intentionally signed a rejection of that coverage during the application process); *see also Romero II*, 111 N.M. 155, 803 P.2d 244 (holding that a rejection of UM/UIM coverage is invalid where the rejection was contained in a signed insurance application, but the application was not attached to the policy); *Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, ¶ 1, ___ N.M. ___, 216 P.3d 264, *cert. denied*, 2009-NMCERT-008, ___ N.M. ___, ___ P.3d ___ (No. 31,864, Aug. 20, 2009) (holding that even though the insured signed a rejection of UM/UIM coverage as part of her application for insurance and received a copy of the application at that time, the

rejection was still invalid because the application and rejection were not part of the actual insurance policy received by the insured).

Allstate also claims that the declarations pages of Plaintiffs' policies meet the rejection requirement. The declarations pages of Plaintiffs' policies list the amount of liability and UM/UIM coverage contained in the policy; however, the declarations pages do not provide Plaintiffs with any specific reference to their rejection of UM/UIM coverage. Our courts have consistently held that a declarations page that does not contain a specific reference to a rejection of UM/UIM coverage is not sufficient to meet the requirements for a valid rejection of that coverage. *See Romero II*, 111 N.M. at 159, 803 P.2d at 248 (stating that the declarations page of the policy was insufficient as a rejection because it did not contain any endorsement, rejection, or exclusion of uninsured motorist coverage); *see also Romero I*, ¶ 31 (stating that the declarations page is not a valid rejection because it does not meet the objectives of a valid rejection as defined by the Court in *Romero II*); *Arias*, 2009-NMCA-100, ¶¶ 1, 4 (stating that the declarations page was insufficient as a valid rejection because it did not contain any specific reference to the plaintiff's rejection of UM/UIM coverage).

In summary, Allstate's Selection/Rejection forms, Important Notice forms, and declarations pages in Plaintiffs' policies do not meet the requirements for a valid rejection of UM/UIM coverage. The Selection/Rejection forms were not a valid rejection because the forms were not made part of Plaintiffs' insurance policies. The

9

Important Notices forms were not a valid rejection because of their generic nature, along with the fact that they were not part of the delivered policies. Finally, the declarations pages in Plaintiffs' policies were not valid rejections because the pages did not contain specific references to Plaintiffs' rejection of UM/UIM coverage.

Where a valid rejection of UM/UIM coverage has not been obtained by the insurer, New Mexico law requires UM/UIM coverage to be read into the policy at the liability limits of the policy, regardless of the intent of the parties or the fact that a premium has not been paid. *Romero II*, 111 N.M. at 155, 803 P.2d at 244.

We hold that Allstate did not obtain a valid rejection of UM/UIM coverage from Plaintiffs; therefore, the district court was correct in reading UM/UIM coverage at the liability limits into the policies.

**Allstate's Motions to Dismiss**

Finally, Allstate argues that the district court erred when it failed to dismiss or sever Plaintiffs' complaint for improper joinder and lack of standing.

Prior to Plaintiffs' filing the present case in district court, Allstate filed two separate complaints requesting declaratory judgment in this matter, one in state district court and the other in federal district court. When Plaintiffs filed the instant case, Allstate moved to have it dismissed for violation of primary jurisdiction based on Allstate's previously filed complaints, or, in the alternative, to stay the proceedings

10

pending resolution of those actions. At the same time, Allstate filed a second motion to dismiss Plaintiffs' suit based on improper joinder and lack of standing.

The district court held a hearing on both of Allstate's motions; however, the court did not reach the issues raised in the second motion because it granted Allstate's request for a stay in the proceedings. The issues raised in Allstate's second motion to dismiss, improper joinder and lack of standing, were not argued or ruled upon at that hearing. Further, Allstate did not request argument or reiterate the issues in that motion after the stay in the proceedings was lifted. In fact, Allstate filed a cross motion for summary judgment without raising or reiterating those issues.

Allstate now attempts to raise these issues on appeal; however, Allstate points to no place in the record where these issues were argued or ruled upon by the district court or where Allstate preserved these issues when the district court ruled on the cross motions for summary judgment. "[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue. Absent that citation to the record or any obvious preservation, we will not consider the issue." *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (filed 2004).

We further note that Allstate's failure to reiterate these issues in its motion for summary judgment indicates waiver or abandonment of the issues. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the

11

trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). "The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue." *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 50, 146 N.M. 698, 213 P.3d 1127, *cert. granted*, 2009-NMCERT-007, ___ N.M. ___, ___ P.3d ___ (No. 31,750, July 30, 2009).

This Court's jurisdiction in this case is limited to the review of final orders issued by the district court. The only order before us is the final order granting summary judgment in favor of Plaintiffs and denying Allstate's motion for summary judgment. The issues raised in Allstate's earlier motions are not before us, and therefore, we decline to address them.

**CONCLUSION**

For the reasons set forth above, we affirm the district court's order granting summary judgment in favor of Plaintiffs.

**IT IS SO ORDERED.**

_____

12

                          **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**MICHAEL E. VIGIL, Judge**